UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA               :

          - v. -                       :    07 Cr. 672 (RJH)

JHAMEL SEAN FRANCIS,                   :
KENNETH FRANCIS,
CLAUDIA FRANCIS,                       :
EBONY DENNIS,
DOMINIK RAWLE and                      :
LENNIE A. NURSE, JR.,
                                       :
          Defendants.
                                       :
- - - - - - - - - - - - - - - - - -x


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO THE DEFENDANT CLAUDIA FRANCIS'S PRETRIAL MOTIONS**



                         MICHAEL J. GARCIA
                         United States Attorney for the
                         Southern District of New York
                         One Saint Andrew's Plaza
                         New York, New York 10007



Antonia M. Apps
Assistant United States Attorney
     -Of Counsel-

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . .1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 2

    A.   Offense Conduct . . . . . . . . . . . . . . . . . .2
    B.   Procedural Background . . . . . . . . . . . . . . .4
    C.   The Government's Discovery . . . . . . . . . . . . 5
    D.   The Search of Claudia Francis's Home . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . .10

I.   THE APPLICABLE LAW FOR DEFENDANT'S MOTION TO SUPPRESS . .10

    A.   Evidence in Plain View . . . . . . . . . . . . . .10
    B.   A Protective Sweep . . . . . . . . . . . . . . . .11
    C.   Serial Numbers on the Computers and Safes . . . . 12
    D.   The Search Warrant Set Forth Probable Cause
        For the Items Seized . . . . . . . . . . . . . . .15
    E.   The Defendants' Allegations Of Misconduct
        Will Be Addressed at the Hearing . . . . . . . . . 16

II.  THE DEFENDANT'S DISCOVERY REQUESTS FOR WITNESS AND EXHIBIT
    LISTS, WITNESS STATEMENTS AND IMPEACHMENT MATERIAL, AND RULE
    404(b) EVIDENCE SHOULD BE DENIED . . . . . . . . . . . .17

    A.   Witness List . . . . . . . . . . . . . . . . . . 17
    B.   Exhibit List . . . . . . . . . . . . . . . . . . 19
    C.   Brady Material . . . . . . . . . . . . . . . . . 20
    D.   Giglo and Jencks Act Material . . . . . . . . . .21
    E.   Rule 404(b) Evidence . . . . . . . . . . . . . . 22

III. THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE
    DENIED . . . . . . . . . . . . . . . . . . . . . . . . .23

# TABLE OF AUTHORITIES

## CASES

Arizona v. Hicks,
  480 U.S. 321 (1987) . . . . . . . . . . . . . . . . . . . . 12, 13

Brady v. Maryland,
  373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . 20

Franks v. Delaware,
  438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . 14

Horton v. California,
  496 U.S. 128 (1990) . . . . . . . . . . . . . . . . . . . . . 10

Maryland v. Buie,
  494 U.S. 325 (1990) . . . . . . . . . . . . . . . . . . . . . 11

Minnesota v. Dickerson,
  508 U.S. 366 (1993) . . . . . . . . . . . . . . . . . . . . . 10

United States v. Alessi,
  638 F.2d 466 (2d Cir. 1980) . . . . . . . . . . . . . . . . . 17

United States v. Awadallah,
  349 F.2d 42 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . 14

United States v. Bejasa,
  904 F.2d 137 (2d Cir. 1990) . . . . . . . . . . . . . . . . . 17

United States v. Bin Laden,
  92 F. Supp. 2d 225 (S.D.N.Y. 2000) . . . . . . . . . . . . . 25

United States v. Bortnovsky,
  820 F.2d 572 (2d Cir. 1987) . . . . . . . . . . . . . . . . . 24

United States v. Canfield,
  212 F.3d 713 (2d Cir. 2000) . . . . . . . . . . . . . . . 14, 15

United States v. Cannone,
  528 F.2d 296 (2d Cir. 1975) . . . . . . . . . . . . . . . 17, 18

United States v. Castellaneta,
  06 Cr. 684 (GEL), 2006 WL 3392761
    (S.D.N.Y. Nov. 20, 2006) . . . . . . . . . . . . . . . 25, 26

United States v. Cephas,
  937 F.2d 816 (2d Cir. 1991) . . . . . . . . . . . . . . . . . 24

United States v. Conley,
   No. 00 Cr. 0816 (DAB), 2002 WL 252766
   (S.D.N.Y. Feb. 21, 2002) . . . . . . . . . . . . . . . . 25

United States v. Coppa,
   267 F.3d 132 (2d Cir. 2001) . . . . . . . . . . . . . 21, 22

United States v. Earls,
   03 Cr. 364 (NRB), 2004 WL 350725 (S.D.N.Y. 2004) . . . 18, 20

United States v. Falkowitz,
   214 F. Supp. 2d 365 (S.D.N.Y. 2002) . . . . . . . . . 18, 20

United States v. Feola,
   651 F. Supp. 1068 (S.D.N.Y. 1987) . . . . . . . . . . . . 26

United States v. Gallo,
   No. 98 Cr. 338 (JGK), 1999 WL 9848
   (S.D.N.Y. Jan. 11, 1999) . . . . . . . . . . . . . . . . 21

United States v. Gandia,
   424 F.3d 255 (2d Cir. 2005) . . . . . . . . . . . . . . . 12

United States v. Gottlieb,
   493 F.2d 987 (2d Cir. 1974) . . . . . . . . . . . . . . . 24

United States v. Greyling,
   00 Cr. 631 (RCC), 2002 WL 424655
   (S.D.N.Y. Mar. 18, 2002) . . . . . . . . . . . . . . . . 22

United States v. Kiyuyung,
   171 F.3d 78 (2d Cir. 1999) . . . . . . . . . . . . . . . 11

United States v. Matos-Peralta,
   691 F. Supp. 780 (S.D.N.Y. 1988) . . . . . . . . . . . . 23

United States v. Mejia,
   No. 98 Cr. 4, 1998 WL 456257 (S.D.N.Y. Aug. 5, 1998) . . . 22

United States v. Morales,
   280 F. Supp. 2d 262 (S.D.N.Y. 2003) . . . . . . . . . 15, 23

United States v. Nachamie,
   91 F. Supp. 2d 565 (S.D.N.Y. 2000) . . . . . . . . . . . 19

United States v. Nixon,
   418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . 22

United States v. Reddy,

190 F. Supp. 2d 558 (S.D.N.Y. 2002) . . . . . . . . . . . 19

United States v. Rueb,
    2001 WL 96177 (S.D.N.Y. 2001) . . . . . . . . . . . . . 19

United States v. Salazar,
    485 F.2d 1272 (2d Cir. 1973) . . . . . . . . . . . . . 24

United States v. Torres,
    901 F.2d 205 (2d Cir. 1990) . . . . . . . . . . . . . . 24

United States v. Travisano,
    724 F.2d 341 (2d Cir. 1983) . . . . . . . . . . . . . . 15

United States v. Triana-Mateus,
    2002 WL 562649 (S.D.N.Y. 2002) . . . . . . . . . . 23, 24

United States v. Turkish,
    458 F. Supp. 874 (S.D.N.Y. 1978) . . . . . . . . . . . 18

**STATUTES**

Fed. R. Crim. P. 7(f) . . . . . . . . . . . . . . . . . . 23

Fed. R. Evid. 404(b)  . . . . . . . . . . . . . . . . . . 22

## PRELIMINARY STATEMENT

The Government respectfully submits this opposition to the motion of defendant Claudia Francis (referred to herein as "Claudia Francis" or "the defendant") (1) to suppress evidence seized from her home on the day she was arrested; (2) directing the government to produce 30 days before a trial witness list, exhibit list, Brady, Giglio, and section 3500 material, and Rule 404(b) evidence; and (3) seeking a bill of particulars. See Memorandum of Law in Support of Defendant Claudia Francis's Pretrial Motions at 1 (filed Feb. 1, 2008) ("Def's Mem.").

First, because the defendant's suppression motion raises a number of disputed facts, the Government consents to an evidentiary hearing on that motion.  The Government expects that the evidence will show that the items seized from Claudia Francis's home on the day of arrest were validly seized either as being in plain view or obtained pursuant to a validly issued search warrant.  The Government sets forth the applicable law in Point I infra.

Second, the Government expects to provide the defendant with witness and exhibits lists, witness statements and impeachment material, and Rule 404(b) evidence, in an appropriate and timely manner before trial.  Many of the defendant's requests for early production of these items are inappropriate and should be denied.  See Point II infra.

1

Finally, the defendant's request for pre-trial discovery in the guise of a bill of particulars should be denied. The defendant already has in her possession information about the nature of the charges sufficient to enable her to prepare for trial and to avoid any unfair surprise. See Point III infra.

## FACTUAL BACKGROUND

A.    Offense Conduct

The Indictment charges that, between August 2006 and April 2007, six defendants engaged in a credit card fraud scheme whereby they obtained credit cards belonging to others, and used those credit cards to purchase goods and gift cards at various stores in the New York area. Some of the credit cards were obtained by changing the addresses on the victim credit card accounts to one of the defendants' addresses. There were over ten victims of this fraudulent scheme, whose credit cards have been used without authorization to purchase goods and gift cards in an amount exceeding $100,000. The defendants purchased clothing, electronic equipment, and even equipment for a car.

As set forth in the Complaint and the Indictment, the defendants purchased thousands of dollars of goods at the Nordstrom retail store. Nordstrom allows customers to return goods for credit to a different credit or debit card than the one used to purchase the item, or to receive cash in exchange for an item purchased by credit card. Each of the defendants, with the

2

exception of Dominik Rawle, returned goods to Nordstrom that had been purchased with victim credit cards for credit to the defendants' own bank accounts.  Dominik Rawle returned goods purchased with victim credit cards and received cash in exchange. Specific examples of the return of goods for credit to the defendants' accounts are set forth as overt acts in the Indictment.  See Indictment ¶ 3 (Exhibit A hereto).  In addition, there are several examples of these purchases and returns set forth in the Complaint.  See Complaint ¶¶ 3-6 (Exhibit B hereto).

The defendants acted together in a conspiracy to effect the various fraudulent transactions using the victim credit cards.  For example, as set forth in the Complaint, Claudia Francis and her cousin-in-law Kenneth Francis both used the credit card of victim 3 to effect fraudulent transactions.[1]  See Complaint ¶ 9(a).  Claudia Francis's nephew-in-law, Dominik Rawle, and Kenneth Francis' spouse, Ebony Dennis, both used the credit card of victim 5 to effect fraudulent transactions.  Id. ¶ 9(b).  Lennie A. Nurse, Jr. (a friend of the Francis family), Jhamel Francis (another nephew-in-law of Claudia Francis), and Dominik Rawle, all used the credit card of victim 6 to effect fraudulent transactions.  Id. ¶ 9(c).  Jhamel Francis and Kenneth Francis (who were cousins) both used the credit card of victim 7

---

[1]Claudia Francis is married to Gary Francis, who is not a defendant.  Gary Francis is the brother of defendant Kenneth Francis, and is the uncle of Dominik Rawle and Jhamel Francis.

to effect fraudulent transactions.  Id. ¶ 9(d).  And Kenneth
Francis and Ebony Dennis (Kenneth Francis' girlfriend) both used
the credit card of victim 8 to effect fraudulent transactions.
Id. ¶ 9(e).

The Complaint also charges that the records of the
credit card company for victim 7's credit card show that the
address was changed on victim 7's account to an address with
which Kenneth Francis, Claudia Francis, and Dominik Rawle have
been connected.  See Complaint ¶ 8.

B.    Procedural Background

On June 27, 2008, Magistrate Judge George A. Yanthis
signed a Complaint charging the six defendants with conspiracy to
commit access device fraud in violation of Title 18, United
States Code, Section 371.  On June 28, 2008, five of the six
defendants were arrested, presented, and arraigned before
Magistrate Judge Yanthis in White Plains, New York.[2]  Each of the
defendants have been released on bail conditions.

An indictment was returned on July 23, 2007, charging
the six defendant in three counts.  Count One charged all six
defendants with conspiracy to commit access device fraud in
violation of Title 18, United States Code, Section 1029(b)(2).
Count One set forth as overt acts a transaction involving each

---

[2]Jhamel Francis surrendered on June 30, 2007, and was
presented and arraigned that day.

defendant in which the defendant returned goods that had been purchased with victim credit cards for credit to their own credit cards (or for cash).

Count Two charged all six defendants with the substantive offense of access device fraud in violation of Title 18, United States Code, Sections 1029(a)(5), 1029(b)(1), and 2.

Count Three charged Jhamel Sean Francis with committing aggravated identity theft in violation of Title 18, United States Code, Sections 1028A and 2.

C.    The Government's Discovery

As described in more detail below, the Government has produced approximately 3,000 pages in discovery and has provided a detailed inventory list for the items produced.  In addition, although not required to do so, the Government has provided lists which identify which documents pertain to which victims of the defendants' fraudulent scheme, and which documents pertain to which defendants, where the information is available to the Government.

On August 27, 2007, the Government produced, among other things, the defendant's bank records, which show credits for the goods return to Nordstrom; credit card records of the victims whose credit cards were used to purchase goods at various retail stores; records from retail stores showing the purchase and/or return of goods; surveillance video tapes from Nordstrom,

which show the date and time of the video; an inventory list of the items seized from the defendant's home; copies of documents seized from the defendant's home.  The Government also provided a detailed list of the categories of documents produced.  See Letter from Antonia M. Apps to Vincent L. Briccetti, Esq. (Aug. 27, 2007) (Exhibit C hereto).  Pursuant to the Government's continuing discovery obligations, the Government provided additional discovery on November 28, 2007, and January 30, 2008.[3]

       From the discovery produced, the defendants are in a position to identify the fraudulent transactions that were committed by the defendants as a group, and in significant part, which defendants are responsible for which transactions.  For example, on August 22, 2006, the credit card belonging to victim 9 was used to purchase four items totaling $1,222.10 from the Nordstrom store at Roosevelt Mall (store number 524).  Three of those items were returned on August 25, 2006 for credit to Claudia Francis' bank account in the amount of $874.43.  The documents produced showing these transaction are attached as Exhibit D hereto.  Those documents are: (1) a Nordstrom summary document which describes the purchase and the return (02278)[4];

---

[3]Consistent with the Government's obligations to protect the privacy and security of the victim information that was produced in discovery, the Government redacted the names and all but the last four digits of the victims' credit card numbers.

[4]The numbers in parens throughout this section refer to the bates numbers of the documents in Exhibit D.

(2) Nordstrom business records which show the date and time the four purchases were made (on August 22, 2006, 8:22 p.m.), the store at which they were made, the dollar amount ($1,122.10), and the victim name and card number used to purchase the items, among other things (02273); (3) a Nordstrom business record showing a breakdown of the four items, giving the bar codes for each item purchased (02274); (4) the victim's Citi account statement showing the purchase at Nordstrom for $1,122.10 (01442); (5) the actual store receipt for the purchase with the victim's forged signature (02279); (6) Nordstrom records showing the date and time (August 25, 2006, 8:21 p.m.) that the three items were returned, showing the bar codes of the returns matching the bar codes of the items purchased (02275, 76); (7) Nordstrom records showing the return of the three items to a credit card belonging to Claudia Francis in the amount of $874.43 (02276, 77); and (8) Claudia Francis' bank statement showing a credit from Nordstrom on August 25, 2006 for $874.43 (00601). The Government has provided time and date stamped video of both the purchase and the return transactions, which can be matched up with the dates and times on the transaction records set forth above. The video shows that the person making the purchase and the return was Claudia Francis. Still photographs taken from the video are attached as Exhibit E hereto.

In addition, although not required to do so, on January 15, 2007, the Government provided lists which identify (by number rather than name) which documents pertain to which victims of the defendants' fraudulent scheme, and which documents pertain to which defendants, where the information is available to the Government.  <u>See</u> Exhibit F hereto.  If there was any basis to defense counsels' claim that they were unable to piece together the transactions committed by their respective clients before this list was provided – and there was not – this helpful guide eliminate any such basis now.

The Government has also provided photographs of the electronic equipment seized from Claudia Francis's home on June 28, 2007, with the exception of the computers and printer that are in the possession of FBI analysts.[5]

D.    <u>The Search of Claudia Francis's Home</u>

The Government expects the evidence to show at the suppression hearing that, among other things, law enforcement agents/officers arrived at Claudia Francis's house on June 28, 2007, around 6:00 a.m.  In advance of the arrest, law enforcement learned that there could be adults other than Claudia Francis

---

[5]The defendant contends that the Government has breached its discovery obligations in failing to provide photographs taken during the search of the defendant's home.  Def's Mem. at 6.  The Government has no obligation to produce these photographs, and did not do so earlier because they were overexposed and therefore useless.  Nonetheless, the Government has now produced these photographs as well.

living in the house.   Although agents knocked loudly on the door
for several minutes, there was no answer.   Eventually, a law
enforcement officer entered the house through an unlocked window.

        The Government also expects the evidence to show that
the agents conducted a limited protective sweep of the house upon
entry into the house.   During that protective sweep, agents saw
in plain view numerous gift cards and credit cards, a shredder
containing shredded credit cards/gift cards, various
incriminating documents (such as receipts in victims' names), and
expensive electronic equipment, amongst other things, during this
protective sweep.   The agents then contacted the United States
Attorney's Office to get a search warrant for the items not in
plain view and to search the hard drives of the computers.   The
agents secured the premises until the search warrant was
obtained, which was approximately 6:30 p.m. that day.   The agents
did not conduct an improper full-blown search prior to obtaining
the search warrant, as the defendant argues.   A copy of the
search warrant is attached as Exhibit G hereto.

<u>ARGUMENT</u>

I.    **THE APPLICABLE LAW FOR DEFENDANT'S MOTION TO SUPPRESS**

As described above, most of the evidence seized from Claudia Francis' house on June 28, 2007 was evidence that was in plain view: the gift cards and credit cards strewn about the house, the clear plastic shredder with shredded gift and credit cards in them, documents bearing other peoples' names on them, and the various electronic equipment in the house.  The agents conducted an appropriate protective sweep of the house upon entry, but did not conduct a full blown search of the house until they obtained the search warrant at about 6:30 p.m. that day.  The applicable law for the suppression hearing is as follows.

A.    <u>Evidence In Plain View</u>

Under the "plain view" exception to the Fourth Amendment, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant."  <u>Minnesota</u> v. <u>Dickerson</u>, 508 U.S. 366, 375 (1993); <u>see</u> <u>also</u> <u>Horton</u> v. <u>California</u>, 496 U.S. 128, 135 ((1990) ("an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant").  Moreover, any item whose incriminating character was immediately apparent and that was seen by the agents and officers

10

during their protective sweep of the house can be seized without a warrant.  See United States v. Kiyuyung, 171 F.3d 78, 83 (2d Cir. 1999) ("Patently incriminating evidence that is in plain view during a proper security check may be seized without a warrant.").

    B.   A Protective Sweep

       In Maryland v. Buie, 494 U.S. 325, 334 (1990), the Supreme Court held that law enforcement officers can conduct a limited protective sweep of a residence incident to an arrest to insure their own safety and the safety of others.  The Court noted that the "risk of danger in the context of an arrest in the home is as great, if not greater than, it is in an on-the-street or roadside investigatory encounter."  Id. at 333.  Thus, "as an incident to the arrest [in a residence] the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  Id. at 334.  Such a protective search is proper where "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene."  Id. at 336.

       Here, the Government expects the evidence to show that law enforcement conducted a proper protective sweep of Claudia Francis's house.  Law enforcement knew that there could be more

than one adult in the house.  Moreover, there was no answer at
the door for a considerable time before entry, which would have
enabled individuals to hide in one of the rooms.  Accordingly, a
quick search of the whole house was appropriate.  Cf. United
States v. Gandia, 424 F.3d 255, 264 (2d Cir. 2005) (protective
sweep improper where there was no evidence suggesting that
another person might be in the residence).

    C.   Serial Numbers on the Computers and Safes

        The defendant argues that the agents must have
conducted a full search of the house before the search warrant
was obtained because the serial numbers of the five computers and
one printer appear in the search warrant affidavit.  Def's Mem.
at 8.  The Government expects the evidence to show that the
agents went into the various rooms to retrieve the serial numbers
from the computers and a printer so that a search warrant to
search the computer hard drives could be obtained.  In so doing,
the agents did not conduct a full search of the house, rather
merely obtained the serial numbers.

        The defendant cites Arizona v. Hicks, 480 U.S. 321
(1987), for the proposition that obtaining serial numbers from
electronic equipment constitutes a full scale search.  In Hicks,
after a bullet was fired through the floor of the defendant's
apartment into the apartment below, police officers entered into
the defendant's apartment (without a warrant) to search for the

shooter, for victims, and for the weapons.    480 U.S. at 323.    One
of the officers noticed that the apartment contained expensive
stereo equipment, and suspected it was stolen.    He moved the
equipment so that he could observe the serial numbers.    The
serial numbers were traced to stolen property.    The Court held
that moving the equipment to obtain the serial numbers was a
separate search because it was "unrelated to the objective of the
authorized intrusion."    Id. at 324.

    In Hicks, the stereo equipment was the fruits of a
crime of which the police were entirely unaware when they entered
the apartment without a warrant.    Here, by contrast, the police
entered the apartment with a warrant to arrest a defendant
accused of a credit card fraud where those credit cards had been
used to purchase electronic equipment.

    Moreover, in this case, unlike Hicks, the serial
numbers were not relevant to the probable cause analysis.    Thus,
there is no claim that, based on the serial numbers, the
computers were in fact purchased by stolen credit cards.    The
search warrant set forth the probable cause for searching the
hard drives of the computers, and the serial numbers were merely
inserted into the search warrant affidavit to specify which
computers were to be searched.    The basis for searching the hard
drives was that the computers would likely contain evidence of
the crime of access device fraud.    See Search Warrant Afft. ¶ 11.

13

(Exh. G)  For example, the computers may contain other persons'
identities on them, or evidence showing how the defendants'
obtained the victims' credit cards.

In the alternative, the Court should simply excise the
serial numbers from the search warrant affidavit, and determine
whether the remaining portion of the affidavit supports probable
cause to issue the warrant under the rule in Franks v. Delaware,
438 U.S. 154 (1978).  "If [after excising the tainted portions]
the corrected affidavit supports probable cause, the inaccuracies
were not material to the probable cause determination and
suppression is inappropriate." United States v. Awadallah, 349
F.2d 42, 65 (2d Cir. 2003) (quoting United States v. Canfield,
212 F.3d 713, 717 (2d Cir. 2000)).  The search warrant affidavit
states that, based on the affiant's experience with credit card
schemes to defraud, computers are commonly used to store evidence
of that crime.  Search Warrant Afft. ¶ 11.  The affidavit also
states that computers inside residences are usually used to store
documents and information, and typically maintain data on their
hard drives including email messages.  Id.  ¶¶ 11, 12.  Since
personal identification information used to effect credit card
fraud is commonly obtained through the Internet, and information
from the Internet is often stored on computer systems,
particularly when they are in a residence, there is sufficient

probable cause to support the search of the computers with the serial numbers excised from the search warrant.

### D.    The Search Warrant Set Forth Probable Cause For the Items Seized

The defendant argues that the warrant is defective because it lacks probable cause with respect to the items seized. Def's Mem. at 10.  In particular the defendant states that there was not probable cause to believe that electronic equipment was purchased with the credit cards or that there would be documents and other records relating to the credit card conspiracy charged in the complaint at the residence.  Id.  As an initial matter, "[a] magistrate judge's probable cause determination is entitled to 'substantial deference' when reviewed by a district court, and any doubts are to be resolved in favor of upholding the determination." United States v. Morales, 280 F. Supp. 2d 262, 268 (S.D.N.Y. 2003) (citing United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983)).  Here, the search warrant affidavit set forth the nature of the credit card scheme, including the fact that the compromised credit cards were used to purchase goods worth more than $100,000.  Cordel Afft. ¶ 7(e).  It defies common sense to believe that the defendants spent $100,000 on clothes. Additionally, the Complaint, which was attached as an exhibit to the Search Warrant, set forth at least one transaction that detailed an item that Claudia Francis had installed in her car. To that extent at least, it was clear that the defendant

15

purchased items other than clothes.  Given that it is common in credit card fraud schemes that electronic items are purchased (and in fact, in this scheme, electronic items were purchased) with stolen credit cards, the presence of so many expensive electronic items in the house provided probable cause to believe that they had been purchased with the stolen credit cards.

With respect to the documents relating to the conspiracy, it is clear from the Search Warrant affidavit and the attached Complaint that the defendants used their addresses as part of their credit card fraud scheme, for example to change the address on victim credit card accounts to one of their addresses. See Complaint ¶ 8.  Moreover, the defendants had to have had access to personal identification information in order to effect a scheme involving over ten victims.  Therefore, it was likely that the house would contain documents bearing other individuals names on them, including receipts for the goods purchased with the stolen credit cards.  Indeed, the Government expects the evidence at the hearing to show that there were many documents in plain view that bore other people's names.

E.  The Defendants' Allegations Of Misconduct
    Will Be Addressed at the Hearing

The defendant makes a number of factual allegations in support of her claim that the agents conducted an improper search before the court signed the search warrant.  These claims are

16

without merit and will be addressed after a full record is developed at the hearing.

## II. THE DEFENDANT'S DISCOVERY REQUESTS FOR WITNESS AND EXHIBIT LISTS, WITNESS STATEMENTS AND IMPEACHMENT MATERIAL, AND RULE 404(b) EVIDENCE SHOULD BE DENIED

### A. Witness List

The defendant requests that the Government provide a witness list 30 days before trial. Def's Mem. at 11-12. Subject to the Court's approval, the Government intends to provide its witness list a week before trial. The defendant has not presented a particularized need for an earlier production of the Government's witness list.

As the Second Circuit has explained, "Federal Rule of Criminal Procedure 16 does not require the Government to furnish the names and addresses of its witnesses." United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990). Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses. See United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980) ("the prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him") (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977)). Moreover, United States v. Cannone, 528 F.2d 296 (2d Cir. 1975), cited by the defendant, makes clear that a defendant is entitled to disclosure of the Government's witnesses only if she makes "a specific showing that

17

the disclosure [is] both material to the preparation of his
defense and reasonable in light of the circumstances surrounding
his case." Id. at 301. A mere "abstract conclusory claim that
such disclosure [is] necessary to [the] proper preparation for
trial" is insufficient. Id. at 301-02 (abuse of discretion for
the district court to grant defense motion for a witness list
supported by only general statement of need).

Claudia Francis has not demonstrated a particularized
need for a witness list. Instead, the defendant simply asserts
that such information would "'level the playing field.'" Def's
Mem. at 12. Such a conclusory statement is insufficient.

Nor do the cases cited by the defendant support her
request. In United States v. Turkish, 458 F. Supp. 874, 881
(S.D.N.Y. 1978), the court ordered early production of a witness
list in a case involving a conspiracy of rigging commodity
futures transactions on the Crude Oil Market. The Court ordered
the production because there were "numerous people who traded in
the crude oil market" and the indictment charged a conspiracy
involving "the entire crude oil market." In United States v.
Earls, 03 Cr. 364 (NRB), 2004 WL 350725 (S.D.N.Y. 2004), a
complex twenty-two count securities, mail and wire fraud case,
the court only ordered a witness list to be produced ten days
before trial, not 30. United States v. Falkowitz, 214 F. Supp.2d
365, 395 (S.D.N.Y. 2002), which ordered production 30 days before

trial, involved over 84 victims and 100,000 documents. The
defendant in United States v. Rueb, 2001 WL 96177 (S.D.N.Y.
2001), was charged in a securities fraud conspiracy spanning more
than three years.

    B.   <u>Exhibit List</u>

      The defendant's request for an exhibit list 30 days in
advance of trial should likewise be rejected. Subject to the
Court's approval, the Government intends to provide its exhibit
list a week before trial. The defendant has not presented a
particularized need for an earlier production of the Government's
exhibit list.

      The Government's obligation to produce in discovery
documents it intends to use as evidence in chief at trial is
governed by Federal Rule of Criminal Procedure 16(a)(1)(C).
Courts have uniformly held that "Rule 16(a)(1)(C) does not
require the Government to identify specifically which documents
it intends to use as evidence." United States v. Reddy, 190 F.
Supp. 2d 558, 571 (S.D.N.Y. 2002) (denying request for early
exhibit list but "encourag[ing] [the Government] to make
discovery of all of its exhibits no later than Monday of the week
preceding the anticipated testimony"). To the extent that
Turkish, cited by the defendant, holds to the contrary, it has
been discredited in this district. See United States v.
Nachamie, 91 F. Supp. 2d 565, 568-70 (S.D.N.Y. 2000) (criticizing

Turkish as erroneously requiring the Government to identify
documents it intended to use in its case in chief).

Where courts have ordered the Government to provide
witness lists in advance of trial, they have done so only in
large, complex cases, involving tens or hundreds of thousands of
documents.  See, e.g., Falkowitz, 214 F. Supp. 2d at 392-93
(ordering the Government to produce a working copy of its exhibit
list one week before trial in a case involving 100,000
documents); Earls, 2004 WL 350725, at *9 (ordering exhibit list
to be provided ten days before trial in a case involving a four-
year investment scheme in which the defendant raised $20 million
from over 100 investors).  Here, there are only 3,000 documents
and the conspiracy spans less than one year.  An early exhibit
list is not required.

     B.   Brady Material

The defendant requests that the Government disclose
exculpatory material pursuant to Brady v. Maryland, 373 U.S. 83
(1963), 30 days before trial.  Def's Mem. at 13-14.  Under Brady,
the Government is obligated to provide favorable evidence to the
defense where the evidence is material to the guilt or
punishment.  See Brady, 373 U.S. at 87.  "Favorable evidence
includes not only evidence that tends to exculpate the accused,
but also evidence that is useful to impeach the credibility of a

government witness." United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001) (citation omitted).

The Government is currently not aware of any <u>Brady</u> material. The Government is mindful of its continuing obligation to disclose <u>Brady</u> material, and will produce any such material as soon as the Government learns of its existence. Because the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under <u>Brady</u>, the defendant's request for an order compelling disclosure 30 days before trial should be denied. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Gallo</u>, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of <u>Brady</u> material based on Government's representations that "it is aware of its obligations under <u>Brady</u> . . . and will produce any <u>Brady</u> material to the defense well before trial").

### D.    <u>Giglio and Jencks Act Material</u>

The defendant also seeks disclosure of prior statements of the Government's witnesses, as well as various materials and information in the Government's possession that may be used to impeach or cross-examine such witnesses, 30 days prior to trial. Def's Mem. at 13-14. Courts in this Circuit have repeatedly refused to compel disclosure of impeachment or <u>Giglio</u> material in advance of trial. The Second Circuit made clear that the timing

requirement for disclosure of Gigilo material is the same as that for Brady material. See Coppa, 267 F.3d at 139; see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Greyling, 00 Cr. 631 (RCC), 2002 WL 424655, at *2 (S.D.N.Y. Mar. 18, 2002) (production of Giglio material by the Wednesday before the week in which a witness will testify is appropriate); United States v. Mejia, No. 98 Cr. 4, 1998 WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) (denying defendant's motion to compel all impeachment material under Giglio based on the Government's representations that it would make such information available at the time that it provides 3500 material). The Government intends to produce Giglio and Jencks Act material on the Friday before trial. The defendant has not demonstrated any need for earlier production.

E.   Rule 404(b) Evidence

The defendant requests an order directing the Government to provide notice of any Rule 404(b) evidence 30 days prior to trial. Rule 404(b) requires that the Government provide "reasonable notice in advance of trial, or during trial, if the court excuses pretrial notice on good cause shown" of its intent to use evidence of other crimes, wrongs, and bad acts. Fed. R. Evid. 404(b) (emphasis added). Subject to the Court's approval, the Government intends to provide notice of Rule 404(b) evidence

22

three weeks prior to trial. This is consistent with other cases of similar complexity. See, e.g., United States v. Triana-Mateus, 2002 WL 562649, at *6 (directing Government to provide 404(b) notice two weeks before trial); United States v. Morales, 280 F. Supp. 2d 262, 275 (S.D.N.Y. 2003) (directing the Government to provide notice not later than two weeks before the start of trial). Requiring substantially more than three weeks' notice would be inappropriate here because the evidence that the Government wishes to offer may well change as the proof and possible defenses crystallize. See United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988).

## III. THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED

The defendant requests a bill of particulars for the following information: (1) the means and methods of the credit card fraud conspiracy; (2) how the scheme was devised and functioned; (3) how the credit cards were obtained; (4) the roles of each of the co-conspirators; (5) who made what unauthorized purchases and when they were returned; (6) how the proceeds were divided among the alleged co-conspirators.

It is well established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge(s) to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed. R.

Crim. P. 7(f); <u>United States</u> v. <u>Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990); <u>United States</u> v. <u>Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." <u>Torres</u>, 901 F.2d at 234 (internal quotation marks omitted).

If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery, no bill of particulars is required. <u>Bortnovsky</u>, 820 F.2d at 572.  In other words, the defense cannot use a bill of particulars as a general investigative tool, <u>United States</u> v. <u>Salazar</u>, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to compel disclosure of the Government's evidence prior to trial. See <u>Triana-Mateus</u>, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citing <u>United States</u> v. <u>Gottlieb</u>, 493 F.2d 987, 994 (2d Cir. 1974)); <u>United States</u> v. <u>Cephas</u>, 937 F.2d 816, 834 (2d Cir. 1991) (the Government is not required to "particularize all of its evidence").  "The Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." <u>Id</u>.  Therefore, "'the Government is not required to provide information that would, in effect, give the defendant a preview of the Government's case before trial.'" <u>Triana-Mateus</u>,

24

2002 WL 562649, at *5 (quoting <u>United States</u> v. <u>Conley</u>, No. 00
Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002)).

Requests like those advanced by Claudia Francis for the
for "particulars as to when, where, how, and with whom each
individual defendant joined an alleged conspiracy have 'almost
uniformly been denied.'" <u>United States</u> v. <u>Bin Laden</u>, 92 F. Supp.
2d 225, 242 (S.D.N.Y. 2000) (quotation omitted).  In <u>Torres</u>, for
example, the defendant Cruz was one of 12 co-conspirators charged
in a narcotics conspiracy.  He sought particulars as to, among
other things, when he was alleged to have joined the conspiracy,
the identity of the persons "known and unknown" as alleged in the
Indictment, and the precise dates the defendant was alleged to
have provided assistance to the conspiracy.  <u>Id</u>. at 233-34.  The
Court of Appeals affirmed the district court's denial of the
motion because the defendant was adequately informed of the
charges against him through the Indictment and the "wealth of
evidentiary detail from the discovery."  <u>Id</u>. at 234 (internal
citation and quotation omitted).

Similarly, in <u>United States</u> v. <u>Castellaneta</u>, 06 Cr. 684
(GEL), 2006 WL 3392761 (S.D.N.Y. Nov. 20, 2006), the Indictment
simply charged that the defendants conspired to commit mail fraud
over a two and a half year period, "without disclosing the nature
of the scheme involved, and listing as over acts only acts
relating to the opening of a bank account and renting a mailbox

25

in the name of a particular corporation – acts that could be part of a wide variety of schemes or frauds." Id. at *1. The second count of the Indictment charged a scheme to defraud the Queens Long Island Medical group by the submission of false invoices on behalf of a sham corporation. Id. The court denied a motion for a bill of particulars seeking such matters as "who prepared and submitted each invoice, when and where each invoice was prepared and submitted, and what items on the invoice are alleged to be false and in what particular." Id. The Court reasoned that "[s]uch evidentiary detail as to precisely how the Government intends to prove is case is not required." Id. See also United States v. Feola, 651 F. Supp. 1068, 1132-33 (S.D.N.Y. 1987) ("Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial.").

        In this case, the defendant has been adequately informed of the nature of the charges against her and her co-defendants. The defendants are alleged to have obtained credit cards belonging to other persons, and to have used those credit cards to purchase goods without authorization. Goods that were purchased at Nordstrom were often returned for credit to the defendants' accounts. See, e.g., Complaint ¶ 7. Not only are specific examples of these purchases and returns set forth in the Complaint and the Indictment, but the defendants have been

provided with the documentation to be able to determine the other transactions committed by them, as shown in the example set forth above.  To aid in their task, the Government has even provided detailed inventories of the discovery produced, and lists identifying which documents pertain to which victims and which defendants.  The defendants have also been provided with video surveillance tapes with date and time stamps, which allow the defendants to match up the transactions with the paper records from Nordstrom.  Accordingly, the defendant is has been advised of the specific acts of which she is accused and is not entitled to a bill of particulars.[6]

————————————

[6]The Government also notes that some of the defendant's requests are for items that are not even elements of the charges the Government will prove at trial.  For example, the Government has no obligation to show how the defendants obtained the credit cards belonging to other persons.  This is not an element of the substantive charge of using other persons credit cards without authorization to obtain goods exceeding a value of $1000 in any one year period.  Since it is not an element of Section 1029(a)(5) that the defendant know how the fraudulent credit cards were obtained, it is not an element of the conspiracy charge under Section 1029(b)(2) either.

Nor is the Government required to show how all of the proceeds of the credit card scheme were distributed, provided that Government show that at each defendant received at least $1,000 in any one year period.  A review of the defendants' bank records, as well as other documents showing receipt of funds, all of which have been produced in this case, show that each of the defendants received at least $1,000.  Indeed, these specific acts are set forth in the Complaint.

**CONCLUSION**

For the foregoing reasons, the defendant's motions for pre-trial discovery in the form of early witness and exhibit lists, <u>Brady</u>, <u>Giglio</u>, and section 3500 material, and Rule 404(b) evidence, and for a bill of particulars, should be denied.

Dated: New York, New York
      March 14, 2008

                    Respectfully submitted,

                    MICHAEL J. GARCIA
                    United States Attorney

By: _____
                    Antonia M. Apps
                    Assistant United States Attorney
                    (212) 637-2198